736 S.E.2d 18

### LAWYER DISCIPLINARY BOARD, Petitioner

v.

### Joshua M. ROBINSON, a Member of the West Virginia State Bar, Respondent.

No. 35549.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 17, 2012.

Decided Oct. 25, 2012.

Rachael L. Fletcher Cipolleti, Esq., Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

Sherri D. Goodman, Esq., Charleston, WV, for Respondent.

PER CURIAM:

This lawyer disciplinary proceeding against Joshua M. Robinson ("Mr. Robinson") was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The Board's Hearing Panel Subcommittee ("HPS") determined that Mr. Robinson committed numerous violations of the West Vir-

ginia Rules of Professional Conduct and recommended that Mr. Robinson's license be annulled. Mr. Robinson filed a March 30, 2012, objection to the recommendation that his law license be annulled, and this Court scheduled this disciplinary proceeding for argument. Upon thorough review of the record, the briefs, argument of counsel, and applicable precedent, this Court accepts the resolution and recommended sanctions of the Board.

## I.

## FACTS

Mr. Robinson is a suspended member of the West Virginia State Bar who most recently practiced law in Charleston, West Virginia, and as such, is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB. Mr. Robinson was admitted to the State Bar on December 5, 2002.

As described by the HPS of the Board, Mr. Robinson beat a client, David L. Gump, with a wooden baseball bat on his front porch and then chased his defenseless client with this weapon down a residential street until he fell to the ground. When Mr. Gump fell down, Mr. Robinson began beating him again with the baseball bat in the head, chest, and back. Mr. Gump sustained significant injuries, and the HPS concluded that causing such injuries to his client constituted a violation of Mr. Robinson's duty to his client. The HPS stated as follows:

> As a duly licensed attorney and an officer of the Court, [Mr. Robinson] has an affirmative duty to comport his actions to that of the penal laws of this State and has therefore repeatedly violated his duties to the public, the legal system and the profession. [Mr. Robinson] provided false factual statements to the police and prosecuting attorneys to cover up his criminal acts.

Following the December 2, 2009, assault of his client, Mr. Robinson pled guilty to the lesser included felony charge of unlawful

wounding on April 19, 2010.[1] The circuit court imposed upon Mr. Robinson a term of one to five years to be served on home confinement with 145 days of credit for time served. Based upon his conviction, the HPS concluded that Mr. Robinson violated Rule 8.4(b) and Rule 8.4(c) of the West Virginia Rules of Professional Conduct.[2] Among other sanctions, as discussed *infra*, the HPS recommended annulment of Mr. Robinson's license to practice law.

The HPS's recommended disposition was filed in this Court on February 27, 2012, and Mr. Robinson filed an objection to the recommended disposition on March 30, 2012. On April 10, 2012, this Court entered an order setting the case for argument. That argument occurred on October 17, 2012.

## II.

## STANDARD OF REVIEW

It is well settled that: " 'This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984)." Syllabus Point 1, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). In Syllabus Point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court recognized the standard of review for proceedings before the Board as follows:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the

1. The original charge was malicious assault.

2. Rule 8.4 provides in pertinent part as follows: It is professional misconduct for a lawyer to:
   . . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . .

[Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*See also*, Syllabus Point 1, *Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 574 S.E.2d 795 (2002); *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). Based upon these standards, this Court evaluates the recommendations regarding appropriate sanctions for Mr. Robinson.

## III.

## DISCUSSION

█ The petitioner Board argues that Mr. Robinson pled guilty to the felony offense of unlawful wounding of his client, Mr. Gump, and that this felony conviction reflects adversely on his honesty, trustworthiness, fitness as a lawyer, and is in direct violation of the West Virginia Rules of Professional Conduct. The Board notes that this Court has long recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). *See also State ex rel. Office of Disciplinary Counsel v. Mooney*, 223 W.Va. 563, 678 S.E.2d 296 (2009); *Office of Lawyer Disciplinary Counsel v. Albers*, 214 W.Va. 11, 13, 585 S.E.2d 11, 13 (2003). In order to effectuate the goals of the disciplinary process, the Board contends that Mr. Robinson's license to practice law should be annulled in addition to other sanctions discussed *infra.*

Mr. Robinson filed a March 30, 2012, objection to the recommended disposition of the HPS. He argues that the HPS arbitrarily ignored the evidence that he submitted and relied on hearsay to reject his testimony. He states that his client was a drug addict who showed up at his house to demand money for drugs and broke the window panes on his door. He states that he grabbed the baseball bat to defend himself and to push Mr. Gump out of his house. He further argues that the HPS should have recom-

mended that his disbarment begin from the date of his March 15, 2010, suspension, instead of the date on which this Court will issue its opinion. Mr. Robinson's reasoning is that although an annulment has no time limitation, a lawyer may apply for reinstatement "after the expiration of five years from the date of disbarment...." See Rule 3.33(b) of the Rules of Lawyer Disciplinary Procedure. Mr. Robinson asserts that his lack of prior disciplinary record and interim rehabilitation warrant a three-year suspension starting from March 15, 2010, the date he was suspended by this Court.

█ As previously discussed, the Board found that Mr. Robinson violated multiple provisions of the Rules of Professional Conduct. The ODC carries the burden of proving allegations of attorney misconduct by clear and convincing evidence. *See* Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."). On December 2, 2009, Mr. Robinson assaulted his client, Mr. Gump, by beating him relentlessly with a baseball bat. On April 19, 2010, Mr. Robinson pled guilty to the felony charge of unlawful wounding. Based upon his conviction, the HPS concluded that Mr. Robinson violated Rule 8.4(b) and Rule 8.4(c) of the West Virginia Rules of Professional Conduct. In addition to considering his guilty plea to unlawful wounding, the HPS listened to hours of testimony and reviewed voluminous documents that clearly established Mr. Robinson's culpability in this crime. Therefore, there is no need for this Court to disturb the Board's findings that Mr. Robinson violated the provisions of the Rules of Professional Conduct.

As to the sanctions recommended by the HPS for Mr. Robinson's misconduct, this Court has explained:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer

misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and, (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

█ It is apparent from the record before us that Mr. Robinson intentionally violated his duties to his client, the public, the legal system, and the legal profession. Mr. Gump was seriously injured when Mr. Robinson repeatedly beat him with a wooden baseball bat and then continued to beat him as he lay defenseless on the ground.

█ This Court next considers whether any mitigating and/or aggravating factors are relevant to a proper resolution of this matter. This Court has explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion in Syllabus Point 3 further explained that,

[m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions;

(12) remorse; and (13) remoteness of prior offenses.

A March 28, 2011, mitigation hearing was held before the HPS wherein Mr. Robinson was represented by counsel. Mr. Robinson suggested that his lack of a prior disciplinary record should be considered. However, Mr. Robinson, was also facing disciplinary charges in Kentucky at that same time for criminal conduct in both states. Moreover, both the charges in Kentucky and West Virginia involved violent crimes. His Kentucky disciplinary charges resulted from two guilty pleas to two counts of second degree wanton endangerment following a violent altercation wherein Mr. Robinson was accused of throwing a propane tank through the windshield of his wife's vehicle as she was attempting to leave their home. The HPS noted, *inter alia*, that Mr. Robinson was also facing disciplinary charges in Kentucky. Given the severity and pattern of his criminal conduct, the HPS properly gave little weight to this factor, i.e., the consideration of an absence of a prior disciplinary record.

Mr. Robinson also suggested to the HPS that personal and emotional problems should mitigate in his favor. However, the HPS concluded that the testimony of Mr. Robinson's licensed counselor provided little by way of mitigation given the brevity and lack of continuity of the counseling sessions and the fact that Mr. Robinson had not been candid with that counselor. The HPS further concluded that contrary to Mr. Robinson's suggestion, his rendition of his felonious assault on Mr. Gump "is simply not supported by the facts and evidence."

In consideration of record before this Court, Mr. Robinson has failed to produce mitigating factors in this case that would reduce the sanction of annulment sought by the ODC and recommended by the HPS.

█ In addition to the mitigating factors in Mr. Robinson's case, several aggravating factors were considered. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Scott, supra.*

The HPS found several aggravating factors existed in Mr. Robinson's case such as: (1) a history of violent criminal actions; (2) other violations of the Rules of Professional Conduct; (3) a pattern of failing to follow court orders; (4) a lack of full disclosure to the HPS; (5) a continuation of a long history of violent behavior after the December 2, 2009, assault on Mr. Gump; and (6) a lack of remorse for his actions. Mr. Robinson's history of violent criminal actions began in 1995 when he was convicted of alcohol intoxication in a public place (first and second offense) as well as aggravated assault in the fourth degree.[3]

Also, as previously discussed, Mr. Robinson was convicted on February 9, 2010, of two counts of wanton endangerment in the second degree following an argument with his wife. As noted, this incident involved Mr. Robinson wantonly using a propane tank to break a window of a vehicle occupied by his then-wife and her juvenile child.[4] A witness to the event explained to responding officers that Mr. Robinson picked up a propane tank and threw it at his wife's vehicle as she was attempting to exit the driveway of their home and that he did this several times until the rear window of the car finally broke. Mr. Robinson's criminal history also includes a conviction from March of 2010 for violating a Kentucky emergency protective/domestic violence order involving his ex-wife.[5]

In addition to his criminal history, the HPS found that Mr. Robinson's conversion of settlement funds belonging to his client, Mr. Gump's grandfather Gerald Gump, which conduct violated Rules 8.4(c)[6] and (d)[7] as well as Rule 1.15(a)[8] and Rule 1.15(b)[9] dealing with safekeeping a client's property, was also an aggravating factor. Finally, the HPS concluded that "[Mr. Robinson]'s complete and apparent failure to recognize the magnitude of and his responsibility for his actions is deeply troubling and should aggravate any sanction issued in this case."

The HPS concluded that the evidence presented exceeded the clear and convincing standard of proof and that "[Mr. Robinson] has violated the Rules of Professional Conduct and the aggravating factors far outweigh any effect of mitigating factors." Accordingly, the HPS recommended the following sanctions: (1) that Mr. Robinson's license to practice law be annulled; (2) that prior to petitioning for reinstatement of his law license, Mr. Robinson undergo a comprehensive psychological examination by an independent licensed psychiatrist to determine if Mr. Robinson is fit to practice law; (3) that Mr. Robinson fully comply with any and all treatment protocol expressed by this licensed psychiatrist; (4) that prior to peti-

---

**3.** Mr. Robinson was given a suspended sentence of six months and placed on supervised probation for two years for his convictions of alcohol intoxication in a public place and aggravated assault in the fourth degree.

**4.** The record is not clear as to the nature of the relationship between the child and Mr. Robinson.

**5.** Mr. Robinson was fined for violating that order.

**6.** *See* note 2 regarding Rule 8.4(c).

**7.** Rule 8.4(d) provides that: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

**8.** Rule 1.15(a) provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

**9.** Rule 1.15(b) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

tioning for reinstatement, Mr. Robinson complete an extensive course recommended by the licensed psychiatrist in anger management; (5) that prior to petitioning for reinstatement, Mr. Robinson pay the costs of his disciplinary proceeding; and (6) that upon reinstatement, Mr. Robinson's practice be supervised for a period of two years.

■ In fashioning an appropriate sanction, this Court is mindful of its prior holding that,

> " '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syllabus Point 5, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syllabus Point 7, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). *Accord* Syllabus Point 5, *Lawyer Disciplinary Bd. v. Sims,* 212 W.Va. 463, 574 S.E.2d 795 (2002) (per curiam). "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics v. Keenan,* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994).

Mr. Robinson committed a criminal offense by beating Mr. Gump, his client, with a baseball bat. His conduct brought physical injury to his client and also injured the public by lessening people's faith and confidence in the legal profession. Further, it is significant to this Court that Mr. Robinson has failed to take responsibility for or even recognize the magnitude of his actions. As noted above, one purpose of sanctioning lawyers for ethical violations is to protect the public. Mr. Robinson's violent criminal actions in both West Virginia and Kentucky provide additional support that an annulment of his law license is an appropriate sanction. Based on these factors, this Court believes that the recommendations of the HPS are appropriate to punish Mr. Robinson, to serve as an effective deterrent to other lawyers, to restore public confidence in the legal profession, and to protect the public.

After fully reviewing the circumstances of this case, this Court is in agreement with all of the recommended sanctions. Therefore, this Court accepts and adopts the Board's recommended sanctions against Mr. Robinson. This Court finds those recommended sanctions to be adequate.

## IV.

### CONCLUSION

For the foregoing reasons, this Court adopts the sanction recommendations set forth by the Hearing Panel Subcommittee as follows:

1. That Mr. Robinson's license to practice law be annulled;

2. That prior to petitioning for reinstatement of his law license, Mr. Robinson undergo a comprehensive psychological examination by an independent licensed psychiatrist to determine if Mr. Robinson is fit to practice law;

3. That Mr. Robinson fully comply with any and all treatment protocol expressed by this licensed psychiatrist;

4. That prior to petitioning for reinstatement, Mr. Robinson complete an extensive course recommended by the licensed psychiatrist in anger management;

5. That prior to petitioning for reinstatement, Mr. Robinson pay the costs of his disciplinary proceeding; and

6. That upon reinstatement, Mr. Robinson's practice be supervised for a period of two years.

Recommended Sanctions Approved.