IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September Term 2013

_____

No. 11-0729

_____

FILED

September 26, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

WENDELYN A. ELSWICK,
a member of The West Virginia State Bar,
Respondent

_____

Disciplinary Proceeding
Nos. 09-03-246 and 09-03-291

LICENSE TO PRACTICE LAW IN WEST VIRGINIA
SUSPENDED FOR TWO YEARS
AND ADDITIONAL SANCTIONS

_____

Submitted: September 11, 2013
Filed: September 26, 2013

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for the Lawyer Disciplinary Board

Mark W. Kelley, Esq.
Ray, Winton & Kelley, PLLC
Charleston, West Virginia
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. pt. 3, *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

3. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

***Per Curiam***:

This lawyer disciplinary proceeding concerning Wendelyn A. Elswick ("Elswick") is before this Court upon the report and recommendations of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board. The disciplinary proceedings arose from a Statement of Charges alleging that Elswick engaged in misconduct with regard to a witness in her client's post-conviction habeas corpus proceeding.

Following evidentiary hearings, the Hearing Panel Subcommittee found that the allegations in the Statement of Charges were proven by clear and convincing evidence and that Elswick violated the *West Virginia Rules of Professional Conduct* in several respects. The Subcommittee recommends that this Court impose a number of sanctions, including a three year suspension of Elswick's license to practice law in this State. Elswick contests the findings and conclusions of the Hearing Panel Subcommittee and objects to the recommendations.

After a careful review of the briefs, the argument of counsel and the record submitted on appeal, this Court is of the opinion that the findings, conclusions and recommended sanctions of the Hearing Panel Subcommittee should be adopted in part, with the exception that the mitigating factors herein warrant a two year, rather than a three year, suspension. Consequently, the report of the Subcommittee is adopted, and Elswick's license to practice law in this State is suspended for a period of two years, with additional sanctions as recommended by the Subcommittee.

1

## I. Factual Background

Elswick was admitted to The West Virginia State Bar in September 1999 and, soon after, began working in the Kanawha County Public Defender Office. The Office's managing lawyer was Chief Public Defender George Castelle. In January 2004, the Public Defender Office was appointed to represent Dana December Smith in his post-conviction habeas corpus proceeding. Elswick was assigned to work on the case in February 2004.

Dana December Smith had been found guilty in 1992 of the murder of Margaret McClain and her daughter, Pamela Castaneda, in the Leewood-Cabin Creek area of Kanawha County. As a result, Smith was serving two life sentences without the possibility of parole. His direct appeal was refused by this Court in 1994. Thereafter, Smith filed several *pro se* petitions for relief in habeas corpus. The current matter arises from an amended habeas petition filed on Smith's behalf in 2003 by retained counsel, M. Timothy Koontz - *State ex rel. Dana December Smith v. Trent*, 97-Misc-43 (Circuit Court of Kanawha County). Elswick and Koontz later became co-counsel in the habeas proceeding.

Elswick began looking into Dana December Smith's assertion of newly discovered evidence that an individual named Tommy Lynn Sells had confessed to the murders of the two women. Sells was incarcerated on death row in Texas for unrelated crimes.[1] Elswick, *inter alia*, (1) requested permission from Tommy Lynn Sells's lawyer to speak with Sells about the West Virginia murders,

---

[1] Sells is the subject of a book by D. Fanning entitled *Through the Window: The Terrifying True Story of Cross-Country Killer Tommy Lynn Sells*.

(2) contacted individuals with regard to the television show "48 Hours" to request a copy of the episode during which Sells confessed to the West Virginia murders and (3) contacted the West Virginia Division of Corrections to determine whether Sells and Dana December Smith had ever been incarcerated at the same time and place in West Virginia.

On May 10, 2004, Elswick and her legal assistant, Jane Brumfield, met with Tommy Lynn Sells at his place of incarceration in Livingston, Texas. Elswick interviewed Sells while Brumfield observed. As determined by the Hearing Panel Subcommittee, Elswick took notes during the interview which indicated that Tommy Lynn Sells had met and interacted with Elswick's client, Dana December Smith, at a bar in St. Albans, Kanawha County, West Virginia. Elswick's notes indicate that the meeting occurred prior to the murders of the two women. The notes state in relevant part:

> Talked to Δ @ St. Albans other side of it . . . A bar had a few drinks Δ bought drugs off Tommy-Became acquainted Δ told Tommy about another place where he could get Drugs w/o worrying about police Met Pamela @ another Bar -

Despite her notes, Elswick insists that she does not recall Tommy Lynn Sells ever telling her that she knew, or had any contact with, her client. According to Elswick, if Sells made such a comment, he retracted it during the same interview. In addition, Elswick maintains that she may have transposed the "Δ" symbol and, in fact, meant the "Δ" to refer to one of the female victims. Moreover, Elswick emphasizes that the notes she took that day consisted of several pages; yet, only the page containing the above passage was used to support the Statement of Charges filed against her.

3

The Hearing Panel Subcommittee found, in addition, that legal assistant Brumfield also took notes on May 10, 2004. Those notes stated in part: "Cabin Creek----St. Albans----other side of it----Met Dana there----bought drugs off me-acquainted—" Nevertheless, Elswick states: "Ms. Brumfield's notes from the initial meeting with Mr. Sells consist of three pages, the last of which contains the following notation: 'Call's him Danea (sp?) - never housed - Never had conversation w/him'"

The following day, May 11, 2004, Tommy Lynn Sells gave a recorded statement to Elswick and Brumfield in which he confessed to the West Virginia murders for which Dana December Smith had been convicted. The statement was conducted by Brumfield in Elswick's presence. Sells was not asked if he knew Dana December Smith or asked about the prior interaction between Sells and Smith at the St. Albans bar.

Thereafter, Tommy Lynn Sells began writing to Elswick at the Kanawha County Public Defender Office, and Elswick responded with letters typed on office letterhead. Ultimately, Sells and Elswick exchanged approximately 60 letters. The evidence reveals that, while Chief Public Defender Castelle expected that there would be some degree of correspondence between Sells and Elswick concerning, for example, the securing of further statements from Sells about the murders, Elswick never revealed to Castelle the magnitude or the nature of the correspondence. The letters sent by Sells were rambling and often included obscenities. In her responses, Elswick encouraged Sells's drawing and poetry writing. Elswick's responses, however, tended to be on a personal rather

4

than a professional level and could be viewed as promoting a "pen pal" relationship with Sells. In some instances, Elswick provided Sells with details of her private and professional life.

Elswick contends that she engaged in that level of correspondence with Tommy Lynn Sells on the advice of Texas authorities who stated that they had shared personal details with Sells and that, if Elswick could maintain rapport with Sells, she might get additional information from him.

On June 9, 2004, Elswick and her co-counsel filed a motion in the Circuit Court of Kanawha County to take Tommy Lynn Sells's deposition, seeking to have his confession to the West Virginia murders taken under oath, subject to cross-examination, for admission in Dana December Smith's habeas proceeding. Elswick attached a copy of Tommy Lynn Sells's recorded statement of May 11, 2004, taken by legal assistant Brumfield during which Sells was not asked if he knew Dana December Smith or whether they met and interacted at the St. Albans bar. The circuit court granted the motion in July 2004.

Elswick conducted the deposition of Tommy Lynn Sells in Texas in September 2004. The Kanawha County Prosecutor's Office appeared by video-conference. Sells again confessed to the West Virginia murders. Upon further questioning by Elswick, Sells denied that he knew, or ever communicated with, Dana December Smith.

In 2005, Elswick was relieved from the case at her request, and Chief Public Defender Castelle took responsibility with M. Timothy Koontz for Dana December Smith's habeas corpus

5

proceeding.[2]  Upon transferring the case, Elswick did not advise Castelle about the initial interview notes that Sells met and interacted with Dana December Smith at the St. Albans bar.  Based on Tommy Lynn Sells's deposition testimony, Castelle believed that Sells did not know and had never communicated with Dana December Smith.

Evidentiary hearings on Dana December Smith's habeas corpus petition were conducted in the Circuit Court of Kanawha County in January 2006.  Prior to the hearings, neither Elswick nor Brumfield advised Castelle about the May 10, 2004, notes taken during the initial interview of Tommy Lynn Sells which showed that Sells had met and interacted with Smith prior to confessing to the West Virginia murders.  During the hearings, Castelle introduced Sells's September 2004 deposition.  As indicated above, Elswick's May 10, 2004, undisclosed notes were inconsistent with the September 2004 deposition on the issue of whether any prior interaction had occurred between Tommy Lynn Sells and Dana December Smith.

On January 31, 2006, Elswick resigned from the Kanawha County Public Defender Office to take another position.  In a February 2, 2006, e-mail, Brumfield told Elswick that notes taken by Brumfield during the initial meeting with Tommy Lynn Sells revealed that Sells stated he had been in a bar with Dana December Smith.  Brumfield's e-mail stated in part: "Wendy, I went back over my notes of our first meeting with Tommy and at that time he said he was at the bar with Dana."

---

[2] After Elswick was relieved as co-counsel in Dana December Smith's habeas proceeding, Brumfield sent four e-mails to a Texas radio station in June and December 2005 requesting "shout outs" to Tommy Lynn Sells.  Brumfield later testified that she sent the e-mails to the radio station at Elswick's direction.  Elswick denied directing Brumfield to send the e-mails.

The Hearing Panel Subcommittee later found that Elswick did not advise Castelle, at that point, that she was, thus, made aware that Brumfield's notes contradicted Sells's deposition.

By letter dated February 7, 2006, Tommy Lynn Sells recanted his confession to the murders of the two women in West Virginia. Believing that Sells's confession to the murders was, nevertheless, valid, Chief Public Defender Castelle argued that there was no evidence to establish that Tommy Lynn Sells and Dana December Smith knew each other. As subsequently determined by the Hearing Panel Subcommittee:

> Attorney Castelle continued to assert both in the Circuit Court and the Supreme Court of Appeals of West Virginia that Mr. Sells' confession was valid and the recantation was false. Attorney Castelle further continued to assert that there was no evidence to establish that Mr. Sells and Mr. Smith knew one another.

The Circuit Court of Kanawha County denied Dana December Smith's request for habeas relief, and the denial was affirmed by this Court in *State ex rel. Smith v. McBride*, 224 W.Va. 196, 681 S.E.2d 81, *cert. denied*, 558 U.S. 921 (2009). In the opinion, this Court noted its agreement with the circuit court that the confession of Tommy Lynn Sells to the murders lacked credibility. Sells's confession, for example, contained blatantly incorrect information about the crime scene.

While Dana December Smith's habeas appeal was pending in this Court, Castelle and his staff discovered the letters exchanged between Tommy Lynn Sells and Elswick and, subsequently, discovered the May 10, 2004, notes taken by Elswick and Brumfield during the initial meeting with Sells in Texas. The letters and notes were located in the Kanawha County Public Defender Office.

Elswick and Brumfield were provided an opportunity to explain the meaning of the discovered documents. Ultimately, however, Castelle terminated Brumfield's employment, moved to withdraw a petition for rehearing filed in the Dana December Smith habeas appeal and moved to withdraw as Smith's counsel.

## II. Procedural Background

A legal ethics complaint was filed by Castelle against Elswick on May 6, 2009, and an additional complaint was filed by Dana December Smith on May 18, 2009. Combining the complaints, the Investigative Panel of the Lawyer Disciplinary Board filed a Statement of Charges against Elswick in April 2011. The Statement of Charges consisted of two counts.

Count I, No. 09-03-246, alleged that on May 11, 2004, Elswick knowingly and intentionally directed or permitted Brumfield to elicit a known false statement from Tommy Lynn Sells, a potential witness in Dana December Smith's habeas proceeding. In the statement, Sells confessed to the murders for which Smith had been convicted but was asked no questions with regard to his prior interaction with Smith in the St. Albans bar. Count I alleged that Elswick, therefore, violated Rule 5.3. of the *West Virginia Rules of Professional Conduct* concerning a lawyer's responsibilities regarding nonlawyer assistants.[3]

---

[3] Rule 5.3. states in part:

    With respect to a nonlawyer employed or retained by or associated with a lawyer. * * *
    (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the

(continued...)

Count I also alleged that Elswick knowingly and intentionally attached Tommy Lynn Sells's May 11, 2004, false statement elicited by Brumfield to the June 9, 2004, motion to take Sells's deposition. The deposition was to be taken for use in Dana December Smith's habeas proceeding. In that regard, Count I alleged that Elswick violated Rule 3.3. requiring candor toward a tribunal, Rule 8.4.(c) concerning misrepresentation and Rule 8.4.(d) prohibiting conduct prejudicial to the administration of justice.[4] Finally, Count I alleged that, in September 2004, Elswick, in violation

---

[3](...continued)
professional obligations of the lawyer; and
      (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
      (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
      (2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[4] Rule 3.3. states:

      (a) A lawyer shall not knowingly:
      (1) make a false statement of material fact or law to a tribunal;
      (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
      (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
      (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
      (b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6. [concerning confidentiality of information].
      (c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
      (d) In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed

(continued...)

9

of Rule 3.4.(b), knowingly and intentionally elicited false statements from Tommy Lynn Sells during his formal deposition, to the effect that Sells did not know, and had never interacted with, Dana December Smith.[5]

Count II, No. 09-03-291, alleged that Elswick, without the knowledge and consent of Dana December Smith, engaged in a pen-pal relationship with Tommy Lynn Sells which proved harmful to the objectives of Smith's habeas proceeding. According to Dana December Smith, after Elswick severed the relationship, Sells became angry and recanted his confession to the murders for which Smith had been convicted. The Investigative Panel charged Elswick with violating Rule 1.7.(b) of the *Rules of Professional Conduct* concerning conflict of interest.[6]

---

[4](...continued)
decision, whether or not the facts are adverse.

In addition, Rule 8.4.(c) and (d) provide that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation or engage in conduct that is prejudicial to the administration of justice.

[5] Rule 3.4.(b) states that a lawyer shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law[.]"

[6] Rule 1.7.(b) states:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

10

Elswick, by counsel, denied the charges in a response filed in June 2011. A series of evidentiary hearings were then conducted before the Hearing Panel Subcommittee in August 2011 and May 2012. Elswick testified that, her May 10, 2004, notes notwithstanding, she did not recall Tommy Lynn Sells ever telling her that he knew or had met her client, Dana December Smith.

On February 22, 2013, the Hearing Panel Subcommittee filed its findings of fact, conclusions of law and recommended sanctions. The Subcommittee found that Elswick violated Rules 5.3.; 3.3.; 8.4.(c) and (d); 3.4.(b); and 1.7.(b) of the *West Virginia Rules of Professional Conduct* as set forth in the Statement of Charges. Among the sanctions the Subcommittee recommends is a three year suspension of Elswick's license to practice law in this State. Elswick contests the findings and conclusions of the Hearing Panel Subcommittee and objects to the recommended sanctions.

### III. Standards of Review

In *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court took the opportunity to "resolve any doubt" concerning the applicable standard of review in lawyer disciplinary cases. 192 W.Va. at 289, 452 S.E.2d at 380. Syllabus point 3 of *McCorkle* holds:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless

such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* syl. pt. 1, *Lawyer Disciplinary Board v. Santa Barbara*, 229 W.Va. 344, 729 S.E.2d 179 (2012); syl. pt. 1, *Lawyer Disciplinary Board v. Blevins*, 222 W.Va. 653, 671 S.E.2d 658 (2008). *See also In re: L.E.C.*, 171 W.Va. 670, 672, 301 S.E.2d 627, 629 (1983) (Absent a mistake of law or arbitrary assessment of facts, recommended sanctions in legal ethics cases are to be given substantial consideration.)

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. Syllabus point 3 of *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028 (1985), states: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *Accord* syl. pt. 3, *Lawyer Disciplinary Board v. Artimez*, 208 W.Va 288, 540 S.E.2d 156 (2000).

Rule 3.7. of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." Where discipline is appropriate, the sanctions which the Hearing Panel Subcommittee may recommend to this Court are found in Rule 3.15. Those sanctions include (1) probation, (2) restitution, (3) limitation on the nature or extent of future practice, (4) supervised practice, (5) community service, (6) admonishment, (7) reprimand, (8)

suspension or (9) annulment. Pursuant to Rule 3.16. of the *Rules of Lawyer Disciplinary Procedure*, the following shall be considered in imposing a sanction:

> (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

*See* syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998) (emphasizing the provisions of Rule 3.16. in mandating discipline in legal ethics cases).[7]

## IV. Discussion

### A. Timeliness

Elswick contends that Count I of the Statement of Charges, relating to the 2009 ethics complaint filed by Chief Public Defender Castelle, is untimely and should have been dismissed pursuant to Rule 2.14. of the Rules of Lawyer Disciplinary Procedure. Rule 2.14. states:

> Any complaint filed more than two years after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the rules of Professional Conduct, shall be dismissed by the Investigative Panel.

---

[7] With regard aggravating or mitigating factors under Rule 3.16., syllabus point 4 of *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003), states: "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." By contrast, syllabus point 2 of *Scott* states that mitigating factors in a lawyer disciplinary proceeding "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Accord* syl. pts. 5, 6, *Lawyer Disciplinary Board v. Martin*, 225 W.Va. 387, 693 S.E.2d 461 (2010).

Elswick notes that her alleged violations under Count I concern acts which occurred (1) on May 11, 2004, when legal assistant Brumfield elicited the recorded statement from Tommy Lynn Sells, (2) on June 9, 2004, when Elswick attached that statement to the motion to take Sells's deposition and (3) in September 2004 when Elswick conducted Sells's deposition. According to Elswick, Castelle failed to exercise reasonable diligence in discovering the alleged violations because, at least by February 2006 when Sells recanted his confession to the murders, Castelle and his staff were searching their files for records of communication between Sells and the Public Defender Office. Yet, Castelle's ethics complaint was not filed until 2009.

The evidence before the Hearing Panel Subcommittee revealed that the Kanawha County Public Defender Office is located on at least two floors of a building in downtown Charleston, West Virginia, and consists of a trial and an appellate division. The Office, employing several attorneys and other employees, handles a significant number of cases of varying complexity, and it is not uncommon for portions of a case file to be with different employees as the work thereon requires. The file in the Dana December Smith case consisted of several large boxes. Evidence was submitted to the Subcommittee that the approximately 60 letters exchanged between Tommy Lynn Sells and Elswick were not found until 2008. The letters were discovered by a staff member in the bottom of a filing cabinet. Elswick had never disclosed the nature of the correspondence to Castelle. The evidence further indicated that, after the letters were found, Elswick's May 10, 2004, notes were located. Although those notes, as well as other notes, were found in Dana December Smith's file, Elswick had not disclosed them, and the significance of the notes, that Sells and Smith met prior to the murders, had not been apparent.

14

The Hearing Panel Subcommittee rejected Elswick's assertion that Count I of the Statement of Charges was untimely. The Subcommittee found that Castelle repeatedly asked Elswick about the relationship between Tommy Lynn Sells and Dana December Smith, and despite her and her legal assistant's notes to the contrary, Elswick assured Castelle that she had no reason to believe that Sells and Smith knew one another or had conspired. The Subcommittee concluded: "It is unfair to suggest that Mr. Castelle, the Chief Public Defender, should have to ferret out the truth on such a critical issue from one of his own trusted attorneys."

While Castelle, by his own admission, states that he could have investigated the matter more promptly, this Court is of the opinion that Castelle exercised reasonable diligence in uncovering the circumstances resulting in the ethics complaint he filed in May 2009. Therefore, Elswick's assertion that Count I is untimely is without merit. *See Lawyer Disciplinary Board v. Smoot*, 228 W.Va. 1, 716 S.E.2d 491 (2010), *cert. denied*, 132 S.Ct. 94 (2011) (rejecting an assertion of untimeliness under Rule 2.14. in a case where an employer's attorney removed a critical portion of a medical report he provided to a *pro se* black lung claimant).

**B. Violations of the Rules of Professional Conduct**

In the underlying case, Elswick's client, Dana December Smith, was serving two life sentences without the possibility of parole for the murder of two women. A potential witness in Smith's habeas proceeding, Tommy Lynn Sells, was on death row in a Texas penitentiary and had confessed to the murders. Elswick acknowledged before the Hearing Panel Subcommittee that it was important to discern any interaction between the two men prior to Sells's death row confession.

15

On May 10, 2004, at the initial interview of Sells, both Elswick and legal assistant Brumfield took notes indicating that Smith and Sells had met and communicated at a bar in St. Albans, Kanawha County, prior to the murders. Elswick and Brumfield did not use that information the following day when Brumfield obtained Sells's recorded statement. During the statement, no questions were asked about Sells having met Dana December Smith before Sells's death row confession. Moreover, the May 10, 2004, notes of the initial interview were not used when Elswick deposed Tommy Lynn Sells in September 2004. Even if the notes were inaccurately taken down, they were never disclosed to Castelle who introduced Sells's deposition in evidence during the habeas proceedings. Moreover, even if the notes had been present in the Dana December Smith file, the evidence of record revealed that each attorney in the Public Defender Office had the authority to organize the file in his or her own way and that, in the Dana December Smith case, the file was in disarray with the import of various notes therein not easily understood. Elswick was in the best position to reveal the inconsistency contained in the initial interview notes but failed to do so.

In addition, a letter dated May 28, 2004, from Tommy Lynn Sells to Elswick stated that "Dane" is a liar. The letter further stated: "And i do think i could of help more had he keep his word." The Hearing Panel Subcommittee commented that the May 28, 2004, letter indicated that Smith and Sells had had some sort of deal between them. Elswick did not show the letter to Castelle, and the letter predated the motion to take Tommy Lynn Sells's deposition.

In February 2006, Brumfield told Elswick in an e-mail: "Wendy, I went back over my notes of our first meeting with Tommy and at that time he said he was at the bar with Dana." The Hearing

16

Panel Subcommittee later found that Elswick did not advise Castelle, at that point, that she was, thus, made aware that Brumfield's notes contradicted Sells's deposition.

As a result, Castelle unknowingly introduced Tommy Lynn Sells's deposition in evidence during Dana December Smith's habeas corpus proceeding in the Circuit Court of Kanawha County. Soon after, when Sells recanted his confession to the murders, Castelle argued that the confession was, nevertheless, valid because there was no evidence that Sells and Dana December Smith knew each other. Castelle asserted the validity of the confession before the circuit court as well as to this Court on appeal. When Castelle learned that his position was undermined by the undisclosed information, he withdrew the petition for rehearing filed in this Court.[8]

The approximately 60 letters exchanged between Tommy Lynn Sells and Elswick more appropriately relate to Count II of the Statement of Charges concerning conflict of interest. The letters were not lawyer-witness communications about the case. Elswick's letters were personal and could accurately be characterized as promoting a "pen pal" relationship with Tommy Lynn Sells. Even if Elswick wrote the letters on the advice of Texas authorities, she did not disclose the correspondence to Castelle or her co-counsel.

---

[8] It should be noted that Elswick made no disclosure of the information in question to her co-counsel in the Dana December Smith habeas proceeding, M. Timothy Koontz.

It should also be noted that, although Dana December Smith and Sells were incarcerated in West Virginia after the murders for a short period of time in the same county jail and penitentiary, the question of whether any communication passed between them remains speculative. That question, however, does not relieve Elswick in the circumstances herein from her responsibilities under the *Rules of Professional Conduct*.

17

Testifying before the Hearing Panel Subcommittee, Brumfield expressed the belief that Tommy Lynn Sells recanted his confession to the murders because Elswick stopped writing to him. Elswick testified in that regard:

> Q. Okay. Did it occur to you when you abruptly discontinued the correspondence with Mr. Sells that it could have a negative impact on the Public Defender's client, Mr. Smith?
> A. Yes.
> Q. Okay. Did you address the 60 – actually, I think it's 28 and 29 – almost 60 letters between you and Mr. Sells with Mr. Castelle at that time, when you withdrew from the case, when you asked to be withdrawn – removed from the case?
> A. I don't recall.
> Q. Okay. But you did appreciate at that time that it could negatively impact your client if you stopped writing to Mr. Sells?
> A. I think that I thought about it. yes.
> Q. But you didn't address it with anyone?
> A. I don't recall addressing it.

### C. The Subcommittee's Findings, Conclusions and Recommendations

The report of the Hearing Panel Subcommittee states:

> The evidence in this case establishes by clear and convincing proof that Respondent [Elswick] violated her duties owed to her client, the public, the legal system, and the legal profession. * * * The actual damage that was done to her client, . . . Dana December Smith, may never be fully known but the legal and ethical ramifications to her supervising attorney [and] her co-counsel [were] very real and serious in nature. The real damage done in this case was the lack of forthright-fullness with the Courts. * * *
>
> [The respondent] failed to recognize, from the outset, the danger she was placing her client's case in by engaging in such a relationship with a key witness as Mr. Sells. In fact, the evidence reflects that Respondent encouraged the relationship with Mr. Sells and often times shared intimate details of her personal and professional life with Mr. Sells. Respondent's actions jeopardized her client's case and the witness's credibility, as well as her own credibility. * * * Respondent's testimony very much bothered this panel when the Respondent denied on direct

18

questioning that she was aware of the fact that Mr. Sells and Mr. Smith knew each other even when it is clearly set forth in her own handwriting in her initial notes. Additionally, at no time did the Respondent take remedial steps to correct the potential fraud on the Court. She took no action to advise Mr. Castelle, Mr. Koontz or her client that there was any error or misconduct on her part.

In recommending the suspension of Elswick's license, the Hearing Panel Subcommittee considered mitigating and aggravating factors. Syllabus point 3 of *Lawyer Disciplinary Board v. Scott*, *supra*, observes:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Lawyer Disciplinary Board v. Stanton*, 225 W.Va. 761, 695 S.E.2d 901 (2010).

Here, the mitigating factors include Elswick's (1) lack of previous legal ethics violations, (2) cooperative attitude toward Disciplinary Counsel, (3) youth and inexperience in the practice of law, (4) evidence of good character and reputation, and (5) expression of remorse, while maintaining that she does not recall Tommy Lynn Sells ever telling her that he had interacted with Dana December Smith.

19

Additional mitigating factors include evidence that Elswick never attempted to conceal her May 10, 2004, notes and never attempted to keep her correspondence with Sells a secret. On the latter point, the record includes testimony that various staff members in the Public Defender Office were aware that some type of letter exchange was going on between Elswick and Sells. Moreover, Elswick had never dealt with a serial killer before, especially of the magnitude of Tommy Lynn Sells. In fact, Koontz testified that Elswick should not have been permitted to travel to Texas to meet with Sells because of her lack of experience and because Sells was highly manipulative.

The aggravating factors considered by the Hearing Panel Subcommittee included its findings that Elswick had engaged in a pattern of misconduct in the underlying habeas proceeding and, as a result, had committed multiple offenses. Among the findings of the Subcommittee was the determination that Elswick had knowingly adduced incomplete and incorrect evidence from Tommy Lynn Sells which was relied upon by Castelle in subsequent court proceedings.

Syllabus point 3 of *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987), holds:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Lawyer Disciplinary Board v. Blevins*, *supra*.

20

Here, the Hearing Panel Subcommittee determined that a three year suspension would be appropriate. In *Lawyer Disciplinary Board v. Smoot*, *supra*, this Court imposed a one year suspension where an employer's attorney removed a critical, narrative summary from a medical report the attorney provided to a *pro se,* black lung claimant. By contrast, Elswick's misconduct was more diverse and extended over a longer period of time. As a result, a suspension of more than one year is warranted. Nevertheless, the mitigating factors discussed above are numerous. In view of those factors, and in keeping with the principles expressed in *Committee on Legal Ethics v. Walker*, *supra*, this Court is of the opinion that a two year, rather than a three year, suspension of Elswick's licence to practice law is appropriate. The remaining sanctions recommended by the Hearing Panel Subcommittee are hereby adopted.

### V. Conclusion

Upon all of the above, Elswick's license to practice law in this State is suspended for a period of two years. The remaining recommended sanctions of the Hearing Panel Subcommittee are adopted. Those sanctions are as follows:

> A. That prior to being reinstated to the practice of law, respondent Elswick be evaluated by a licensed mental health provider and follow any protocol, if any, as directed by the mental health provider;
> B. That prior to being reinstated to the practice of law that respondent be ordered to undergo an additional twelve (12) hours of Continuing Legal Education with focus on ethics;
> C. That Respondent be ordered to pay the costs of these proceedings pursuant to Rule 3.15. of the *Rules of Lawyer Disciplinary Procedure*;
> D. That prior to being reinstated to the practice of law that Respondent reimburse said costs to the Lawyer Disciplinary Board; and

21

E. That if Respondent is successfully reinstated in the future, that upon reinstatement she be placed on two (2) years of probation with supervised practice by an active attorney in her geographic area in good standing with The West Virginia State Bar.

**License to Practice Law in West Virginia**
**Suspended for Two Years**
**And Additional Sanctions**