No. 20-0233 – *Lawyer Disciplinary Board v. Gregory H. Schillace*

WOOTON, Justice, dissenting:

Based on the facts and circumstances of this case, I respectfully dissent from the draconian penalty imposed on the respondent, Gregory H. Schillace – a penalty which is, in practical effect, the death penalty for this solo practitioner's career.

At the outset, let me note several points of agreement with the majority. First, there is no question that during the time frame involved in the Statement of Charges ("the Charges") the respondent caused harm to a number of clients and committed multiple violations of the Rules of Professional Conduct, and for that he must pay a price. Second, I agree that the Hearing Panel Subcommittee ("HPS") committed clear legal error in concluding that this Court's opinion in the case of *Rector v. Ross*, 245 W. Va. 352, 859 S.E.2d 295 (2021), was dispositive of the ethical violations alleged in Count III of the Charges. Our holding in *Rector* was narrow: that because the $5,000.00 fine the circuit court had imposed on the respondent as a sanction for various acts of misconduct was a criminal contempt sanction, the respondent was entitled to a jury trial.[1] Nothing in *Rector* can be read as bearing on the factual issue of whether the alleged misconduct was proved,

---

[1] *See* Syl. Pt. 8, in part, *In re Frieda Q.*, 230 W. Va. 652, 742 S.E.2d 68 (2013) ("In any contempt case where the sanction imposed is either (1) a determinate term of incarceration, or (2) a monetary penalty payable to the State or to the court, the contemner is entitled to a jury trial.").

as the HPS seemed to believe. Third, I agree with the majority that three aggravating factors recognized in our case law were established by unrebutted evidence: pattern of misconduct, multiple offenses, and substantial legal experience.

However, I strongly disagree with the majority's finding that selfish motive was established; the undisputed evidence showed that the petitioner was motivated not by greed but by depression – a depression that caused him to ignore his duties to his clients and then stick his head in the sand as things fell apart. Further, I disagree that these aggravating factors come close to outweighing the substantial mitigating factors present in this case, where the facts fall squarely within this Court's holding in *Lawyer Disciplinary Board. v. Dues*, 218 W. Va. 104, 624 S.E.2d 125 (2005):

> In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is medical evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

*Id*. at 105, 624 S.E.2d at 126, Syl. Pt. 3; *see also Law. Disciplinary Bd. v. Scott*, 213 W. Va. 209, 218, 579 S.E.2d 550, 559 (2003) ("I agree that the attorney here should not practice law until he can show that his condition has improved. However, I would permit reinstatement of the attorney's law license upon a showing that his illness is under control and will not adversely affect the public interest.") (McGraw, J., dissenting).

In the underlying proceedings, the HPS, which heard the testimony of thirteen witnesses, reviewed sixty-seven exhibits, and issued a fifty-six-page report, recommended that the respondent's law license be suspended for two years, "*provided* that the imposition of that suspension is stayed and the Respondent placed on a period of Three (3) years of probation and supervised practice." (Emphasis added). Unsatisfied with this recommendation, the majority refuses to stay any of the suspension, notwithstanding that the mitigating factors here far outweigh any aggravating factors; that the respondent's mental condition (depression) was "a substantial cause of the misconduct" which, in the opinion of his treating therapist, is unlikely to recur if the respondent continues to receive treatment; that the respondent has, in fact, continued to receive treatment; that the respondent has implemented changes in many aspects of law office management in response to suggestions made by a consultant he hired for this express purpose; and that in the period of time (close to three years) which has elapsed since the filing of these charges, the respondent has continued to practice law with no problems or complaints arising from his handling of his cases. This final factor has heightened significance, because the lengthy suspension of the respondent's law license imposed by the majority will create immediate chaos in all of his pending cases; all of the clients will have to find new counsel – a process fraught with practical difficulties, allocation of fees being just one – which in turn will result in substantial delay in the resolution of their cases. Moreover, in light of the

respondent's age[2] and his status as a sole practitioner, a two-year suspension of his license to practice law virtually guarantees that his legal career is over.

My research discloses that in the dozens of lawyer disciplinary cases decided by this Court in the past decade,[3] the vast majority resulted in suspensions measured in months rather than years. As for the remaining cases, setting aside those in which the attorney respondents have been disbarred as a result of conduct so egregious that allowing them to retain a law license is deemed a disservice to the Bar and a danger to the public,[4] there have been only nine occasions on which this Court has suspended an attorney's license for two years or longer without staying any part of the penalty.[5] In light of the facts

---

[2] The respondent has been a member of the West Virginia Bar for more than thirty years.

[3] In my review I have not included any discussion of cases that were decided by unpublished orders, cases involving reciprocal discipline, or cases involving reinstatement.

[4] *See Law. Disciplinary Bd. v. Robinson*, 230 W. Va. 18, 736 S.E.2d 18 (2012); *Off. of Disciplinary Couns. v. Rogers*, 231 W. Va. 445, 745 S.E.2d 483 (2013); *Law. Disciplinary Bd. v. Scotchel*, 234 W. Va. 627, 768 S.E.2d 730 (2014); *Law. Disciplinary Bd. v. Clifton*, 236 W. Va. 362, 780 S.E.2d 628 (2015); *Law. Disciplinary Bd. v. Kohout*, 238 W. Va. 668, 798 S.E.2dd 192 (2016); *Law. Disciplinary Bd. v. White*, 240 W. Va. 363, 811 S.E.2d 893 (2018); *Law. Disciplinary Bd. v. Hart [Hart II]*, 241 W. Va. 69, 818 S.E.2d 895 (2018); *Law. Disciplinary Bd. v. Ryan*, 241 W. Va. 264, 823 S.E.2d 702 (2019); *Law. Disciplinary Bd. v. Morgan*, 243 W. Va. 627, 849 S.E.2d 627 (2020); *Law. Disciplinary Bd. v. Hatfield*, 244 W. Va. 285, 852 S.E.2d 785 (2020).

[5] In *Lawyer Disciplinary Board v. Sidiropolis*, 241 W. Va. 777, 828 S.E.2d 839 (2019), the two-year suspension imposed on the respondent was stayed after two months, and in *Lawyer Disciplinary Board v. Marcum*, 245 W. Va. 760, 865 S.E.2d 502 (2021), the two-year suspension imposed on the respondent was stayed after six months.

and circumstances of this case, I cannot agree that the respondent should be the tenth member of this Ring of Dishonor. In this regard, a brief review of the cases demonstrates that none of them are factually on point with the instant case.

For example, in *Lawyer Disciplinary Board v. Aleshire*, 230 W. Va. 70, 736 S.E.2d 70 (2012), this Court imposed a three-year suspension based on what we deemed the respondent's "egregious conduct" in his representation of two clients, specifically, failing to file one client's tax returns, causing her to be investigated by the Internal Revenue Service; refusing to deliver a deed for a property another client had purchased, causing the client to lose the use of the property for more than two years; causing actual financial harm to both clients; charging unauthorized attorney fees; and attempting to condition a settlement of a client's claim on the client's withdrawal of an ethics complaint. *Id*. at 74-77, 736 S.E.2d at 74-77. Additionally, the respondent had failed and refused to respond to requests for information from the ODC or to otherwise cooperate in the investigation of the complaints. *Id*. at 75, 736 S.E.2d at 75. The HPS found the existence of six aggravating factors, all of them substantial and serious, which the respondent countered by citing as a mitigating factor – his sole mitigating factor – that he was ignorant of the Rules of Professional Conduct and was "out of his depth in his substantive areas of practice." *Id*. at 79, 736 S.E.2d at 79. Not surprisingly, this Court found that this so-called mitigating factor was in fact another aggravating factor for an attorney who had been practicing law for ten years. *Id*.

In *Lawyer Disciplinary Board v. Elswick*, 231 W. Va. 684, 749 S.E.2d 577 (2013), this Court imposed a two-year suspension on the respondent, an assistant public defender, for concealing evidence in a criminal case from her superior which in turn caused him – unwittingly – to make false statements to the court with respect to the anticipated testimony of a witness in habeas corpus proceedings. *Id*. at 687-89, 749 S.E.2d at 581-82. Additionally, the respondent knowingly attached what she knew to be the witness' false statement to a motion, and then intentionally elicited those same false statements in the witness' deposition. *Id*. at 690, 749 S.E.2d at 583.[6] Although the Court reduced the HPS's recommended three-year sentence to a two-year sentence, in light of the fact that respondent was relatively inexperienced in the practice of law and wholly inexperienced in dealing with manipulative serial killers,[7] we reiterated that her "misconduct was more diverse and extended over a longer period of time[]" than the conduct of an attorney in a somewhat similar case who had received only a one-year suspension. *Id*. at 695, 749 S.E.2d at 588 (citing *Law. Disciplinary Bd. v. Smoot*, 228 W. Va. 1, 716 S.E.2d 491 (2010)).

---

[6] It is suggested that the respondent engaged in a personal relationship with the witness, who was on death row in Texas, in order to encourage him to confess to the crimes for which her client had been convicted. *Elswick,* 231 W. Va. at 694, 749 S.E.2d at 587.

[7] As noted in the Court's opinion, the witness in question "is the subject of a book by D. Fanning entitled Through the Window: The Terrifying True Story of Cross-Country Killer Tommy Lynn Sells." *Id.* at 687, n.1, 749 S.E.2d at 580, n.1.

In *Lawyer Disciplinary Board v. Busch*, 233 W. Va. 43, 754 S.E.2d 729 (2014), this Court imposed a three-year suspension on the respondent, then the Randolph County Prosecuting Attorney, for making material representations to the circuit court, to opposing counsel, and in court documents on multiple occasions, in an attempt to withhold information from defense counsel in two criminal cases. *Id*. at 47-51, 754 S.E.2d at 733-37. This Court found that the respondent's actions were intentional, and that he "was provided with many opportunities to correct the misstatements and inaccuracies that he portrayed to the lower court. When those opportunities arose, he did not take advantage of them. His pattern of misconduct only deepened the misrepresentations made to the court." *Id.* at 54, 754 S.E.2d at 740. In affirming the HPS's recommendation of a three-year suspension, we noted the existence of multiple aggravating factors, including the fact that the respondent was a public official; in this latter regard, we noted that historically we had "placed great emphasis on the importance of the community's trust in the matter of public office." *Id*. at 56, 754 S.E.2d at 742.

In *Lawyer Disciplinary Board v. Stanton*, 233 W. Va. 639, 760 S.E.2d 453 (2014), this Court imposed a three-year suspension on the respondent based on his inappropriate romantic relationships – one of them sexual – with two incarcerated clients.[8]

---

[8] Although the respondent "vacillated throughout these proceedings as to whether he was an attorney for [the two women]," the HPS found that "the evidence exceeds that of clear and convincing evidence that Respondent was [the women's] attorney. Respondent's self-serving statements to the contrary are false statements of material fact." *Stanton,* 233 W. Va. at 646, 760 S.E.2d at 460.

*Id.* at 642, 760 S.E.2d at 456. At the hearing on the charges, the respondent appeared in shorts, a t-shirt and running shoes, listened to the testimony of two witnesses, and then, after advising the HPS that he "was going out for a breath of fresh air," got into his truck and left. *Id.* at 643, 760 S.E.2d at 457. Given the respondent's attitude toward the disciplinary process, which could most charitably be characterized as insouciance but appeared to the HPS (and to this Court) as contemptuous disrespect, it is little wonder that this Court found the HPS's recommended sanction to be appropriate. Further, noting that the respondent was formerly general counsel for the Department of Corrections and thus had knowledge of the rules and regulations governing prison facilities, this Court found that "lawyers who engage in the type of conduct exhibited by Mr. Stanton must be severely sanctioned[]" in order "for the public to have confidence in our disciplinary and legal systems[.]" *Id.* at 652, 760 S.E.2d at 466.

In *Lawyer Disciplinary Board v. Rossi*, 234 W. Va. 675, 769 S.E.2d 464 (2015), this Court imposed a three-year suspension on the respondent based on his failure to diligently represent six clients, his refusal to return the clients' files to them upon request, his refusal to follow the ODC's directive to return those files, and his failure to respond to correspondence from the ODC. *Id.* at 677-81, 769 S.E.2d at 466-70. Indeed, during the course of the disciplinary proceedings the respondent failed to contact the Lawyer Assistance Program after being directed to do so and failed to file a brief after being ordered

8

by this Court to do so.[9]   Although the respondent claimed that his misconduct was the result, in part, of depression, the Court refused to consider this as a mitigating factor because "Mr. Rossi did not present any medical evidence supporting his contention that he suffered from depression or that he sought treatment for this depression." *Id*. at 685-86, 769 S.E.2d at 474-75.

In *Lawyer Disciplinary Board v. Hart [Hart I]*, 235 W. Va. 523, 775 S.E.2d 75 (2015), this Court imposed a three-year suspension on the respondent based on his failure to diligently represent seven clients; failure to release settlement funds to clients for extended periods of time; failure to return unearned fees; failure to respond to numerous requests for information – twenty-one in all – by the ODC; and failure to abide by "orders from this Court regarding handling of appeals in certain cases, as well as rebuffing the directive to file a response brief in the disciplinary matters currently before us for decision." *Id*. at 527-32, 535, 775 S.E.2d at 79-84, 87. The Court noted that there were multiple aggravating factors in the case but *no* mitigating factors; as had been the situation in *Rossi*, the respondent failed to present any medical evidence as to his claimed depression and no

---

[9] Citing to an earlier case, *Lawyer Disciplinary Board v. Grindo [Grindo I]*, 231 W. Va. 365, 371, 745 S.E.2d 256, 262 (2013), the Court noted that "[t]he fact that [the respondent] failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against [him]." *Rossi*, 234 W. Va. at 686, 769 S.E.2d at 475.

evidence showing "that the alleged disability caused the misconduct because it appears that Mr. Hart never sought treatment." *Id*. at 537, 775 S.E.2d at 89.[10]

In *Lawyer Disciplinary Board v. Cooke*, 239 W. Va. 40, 799 S.E.2d 117 (2017), the first of several cases involving overbilling of the West Virginia Public Defender Services ("PDS"),[11] this Court imposed a two-year suspension on the respondent for conduct that was later summarized in *Grindo II* as "billing an obviously false number of hours to the PDS . . . billing for the same travel in multiple cases . . . [and] commit[ing] unethical acts in two others [sic] other matters."[12] *Grindo II*, 243 W. Va. at 141, 842 S.E.2d at 694. Ironically, although the respondent attempted to claim a medical condition as mitigation – low testosterone, which caused him to sleep ten to sixteen hours a day – we noted that this was highly incriminating evidence as to the authenticity of bills the respondent submitted to PDS claiming fifteen to twenty hours of case-related work on each of thirty-seven different days. *Id*. at 50, 799 S.E.2d at 127. We also noted that with respect

---

[10] The respondent was ultimately disbarred for various offenses, including failure to attend to the duties of a suspended lawyer. *See Hart II*, 241 W. Va. at 92, 818 S.E.2d at 918.

[11] *See also Law. Disciplinary Bd. v. Hassan*, 241 W. Va. 298, 824 S.E.2d 224 (2019); *Law. Disciplinary Bd. v. Grindo [Grindo II]*, 243 W. Va. 130, 842 S.E.2d 683 (2020).

[12] One of those other matters was an abuse and neglect case in which the respondent failed to file a timely guardian ad litem brief, resulting in delay which "is not only a gross disservice to [the guardian's] infant client, but also actively perpetuates the continuing harm occasioned by the lack of permanency." *Cooke*, 239 W. Va. at 53, 799 S.E.2d at 130.

to one of the other (non-billing) matters, the respondent had "persistent[ly] refus[ed] to respond to ODC, PDS, and particularly this Court," *id*. at 53, 799 S.E.2d at 130, "[i]ncredibly, despite receiving the HPS' recommendation of suspension of his law license and despite assurances to the HPS that he had rectified this dilatory conduct, Cooke likewise filed his response brief in the instant matter untimely." *Id*. We summed up as follows:

> Cooke's defrauding of the State through overbilling, gross mishandling of a client matter and funds, his dereliction of duty to his infant clients as a guardian ad litem – all of which is compounded by his unrelenting pattern of unresponsiveness and empty reassurances of remediation – plainly justify this degree of discipline.

*Id*. at 55, 799 S.E.2d at 132.

In *Lawyer Disciplinary Board v. Sirk*, 240 W. Va. 274, 810 S.E.2d 276 (2018), this Court imposed a three-year suspension on the respondent, who had misappropriated client funds and thus "breache[d] one of the fundamental duties of this profession . . . [which] perhaps more than any other, sullies the reputation of the entire legal profession and not merely the errant practitioner." *Id*. at 282, 810 S.E.2d at 284. Additionally, the respondent had committed post-complaint infractions, including "ignor[ing] a directive of this Court when he failed to file a responsive brief. Not only does this behavior evince a disturbing pattern of misconduct, but it also shows a failure to obey an obligation imposed by a tribunal." *Id*. at 280, 810 S.E.2d at 282. Concluding that the

11

aggravating factors in the case far outweighed the mitigating factors, and reiterating that "[t]here are few more egregious acts of professional misconduct of which an attorney can be guilty than misappropriation of a client's funds held in trust," *id*. at 283, 810 S.E.2d at 285 (citation omitted), this Court concluded that the severe penalty imposed was necessary "to maintain the integrity of the State Bar." *Id*.

Finally, in *Grindo II,* this Court imposed a two-year suspension on a repeat offender[13] who had overbilled the PDS and, in the course of doing so, made false statements to the circuit courts who reviewed and approved his vouchers, to the PDS, and ultimately to the ODC. 243 W. Va. at 132, 842 S.E.2d at 685. In upholding the HPS's recommended sanction, the Court first noted that "public money was used to pay for the respondent's overbilling. 'This Court considers the protection of the public and the State coffers of paramount importance, particularly as pertains to lawyer disciplinary matters.'" *Id*. at 139, 842 S.E.2d at 692. Further, we found that there were no mitigating factors in the case. *Id*. at 141, 842 S.E.2d at 694. Summarizing the facts, we wrote that "the respondent had a business model of billing paralegal work at illegal rates, he lied about self-reporting, and there are no factors to mitigate his sanction." *Id*. at 142, 842 S.E.2d at 695.

---

[13] In *Grindo I* "this Court publically [sic] reprimanded [the respondent] for his conduct in two separate cases where he failed to act diligently, failed to expedite his clients' cases, and failed to comply with court orders requiring him to file briefs." *Grindo II*, 243 W. Va. at 140, 842 S.E.2d at 693.

There is a critical commonality in all of the cases discussed above: the aggravating factors far outweigh any mitigating factors – indeed, in several of the cases there are no mitigating factors at all. Here, in contrast, the aggravating factors are far outweighed by the substantial mitigating factors – even the pared down list accepted by the majority.[14] In many of the cited cases it is noted that the respondent attorneys refused to cooperate with the ODC and/or the HPS; here, in contrast, the respondent cooperated throughout the investigatory and adjudicatory proceedings. Many of the cited cases involved commingling or theft of client funds; here, in contrast, there was no evidence of any financial gain on the respondent's part. Although in several of the cited cases the respondent attorneys claimed to suffer from depression, there was a complete absence of any proof to substantiate the claims, as well as an absence of any proof that the attorneys' misconduct was caused in whole or in part by any mental condition. Here, in contrast, the respondent's depression is well documented, he has been in a lengthy course of treatment for the condition, and the HPS specifically found that the respondent's misconduct was caused primarily by his mental condition. Critically, the record supports the HPS's finding that the misconduct is not likely to recur – and indeed, has not recurred in the three years since the respondent began treatment.

---

[14] The majority agrees that the petitioner's emotional problems, mental impairment, interim rehabilitation, and character and reputation, are all mitigating factors to be considered.

In summary, I do not believe the respondent's penalty must or even should be congruent with the penalties imposed in the cited cases, as the facts and circumstances of this case fall squarely within this Court's rationale and holding in *Dues. See* 218 W. Va. at 105, 624 S.E.2d at 126, Syl. Pt. 3. Accordingly, this Court should temper justice with mercy, following the example set not only in *Dues*[15] but also in *Sidiropolis* and *Marcum*.[16] In this regard, in *Sidiropolis*, where the respondent attorney, an addict, had pleaded guilty in federal court to conspiracy to distribute a large quantity of heroin, 21 U.S.C. § 842(a)(1), we found that

> [t]he conduct underlying these disciplinary proceedings is quite serious and reflects how addiction issues, particularly involving heroin, are becoming all too common in our State and our Nation. However, *this proceeding offers encouragement that recovery is possible with the proper assistance*. Thus, while Mr. Sidiropolis' criminal conduct cannot be ignored, we find it appropriate in this instance to, in determining the proper sanction, recognize his hard-earned recovery and his dedication to his own sobriety and to that of others around him.

241 W. Va. at 788, 828 S.E.2d at 850 (emphasis added). In *Marcum*, another case involving an attorney who was both addicted to drugs and criminally involved in their distribution,

---

[15] In *Dues*, where the respondent attorney was found to have committed thirty-nine violations of the Rules of Professional Conduct, this Court reduced the proposed penalty to a public reprimand and a restriction on the respondent's practice whereby the only legal work he could perform for twenty-four months was in his capacity as a mental health commissioner. 218 W. Va. at 114, 624 S.E.2d at 135.

[16] *See supra* note 5.

14

we found that the respondent could not bring himself within the rationale of *Sidiropolis* for several reasons: first, he was an elected member of the West Virginia House of Delegates – a serious aggravating factor,[17] and second,

> rather than take deliberate steps to ensure that his drug addiction did not adversely impact his client's interests, respondent knowingly represented a client with whom he had a conflict of interest and with whom he engaged in criminal activity. Further, he proceeded to negotiate a plea agreement for Mr. Marcum without disclosing his own criminal involvement with him.

*Id.* at 776, 865 S.E.2d at 518. Nonetheless, the two-year suspension imposed on the respondent was stayed after six months, a penalty harsher than that imposed in *Sidiropolis* but far less than that imposed in the instant case.

Where, as here, the evidence establishes that the respondent's misconduct was the result of a mental condition for which he is receiving ongoing treatment; that he has learned from his mistakes; and that he has already proved, throughout the course of "a

---

[17] We noted that

> "[t]his Court has emphasized that a lawyer who holds public office is held to a higher ethical standard because of his or her position of public trust: 'Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office.'"

*Marcum,* 245 W. Va. at 776, 865 S.E.2d at 518 (citing Syl. Pt. 3, *Comm. On Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989)).

sustained period of successful rehabilitation[,]"[18] that future misconduct is unlikely, I would impose a two-year suspension and require the respondent to serve three months of it, with the remainder stayed for a twenty-one month term of supervised probation by a West Virginia licensed attorney in good standing tasked with providing quarterly reports to the ODC. Under the facts and circumstances of this case, the respondent's ethical violations, although serious, do not warrant putting a wrecking ball to his career and livelihood.

For these reasons, I respectfully dissent.

---

[18] *See Dues*, 218 W. Va. at 105, 624 S.E.2d at 126, Syl. Pt. 3, in part.